No. 12,959.

| 51 | 727 |
|-----|-----|
| 108 | 34 |

J. S. ANDERSON VS. DR. W. THOMPSON ET ALS.

.SYLLABUS.

The act of incorporation of a manufacturing company was erroneously drafted under Act 36 of the Acts of 1888, instead of, as it should have been, under Section 681, et seq. of the Revised Statutes.

The promoter and organizer of the company changed his position and sought to attack his own acts as a charter member and president of the company.

HELD· That he was estopped, that the incorporators, as relates to those with whom they have contracted, can not question the incorporation of a company it was possible to incorporate (though it may be a nullity as to third persons). A company, which the charter members attempted to incorporate and which has acted as a corporation, having in appearance, at least, full power and authority to act—a power and authority which induced others to enter into contract with it and invest money for the benefit of the company—is binding upon its promoters and organizers.

ON APPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

*Buck, Walshe & Buck* for Plaintiff and Appellant.

*W. F. Brewer* and *Parkerson & Tobin* for Defendants, Appellees.

Argued and submitted March 10, 1899.
Opinion handed down March 20, 1899.

The opinion of the court was delivered by

BREAUX, J. Plaintiff claiming that he is defendant's partner and not a shareholder of the Independent Ice Co., seeks to treat the latter as a mere fiction, and asks for a judgment dissolving the partnership, and decreeing the parties, respectively, owners of the property in proportion to their respective interests.

The fact is, that in 1896, plaintiff engaged in organizing a corporation under the provisions of Act 36 of 1888, for the purpose of "purchasing, manufacturing and selling" of "ice and distilled water."

To this end he and four others appeared before a notary public, and signed an act of incorporation. This act was published as required by law.

Plaintiff soon after spent above five thousand dollars in buying necessary machinery and in putting up the plant.

Plaintiff avers that those who signed the act of incorporation with him did not subscribe to any stock; that no list of subscribers to stock was ever recorded in the mortgage office, as required by Section 686 of the Revised Statutes. Plaintiff avers further, that, in that condition of affairs, he met defendant in the case. They agreed, that with a capital of fifteen thousand dollars, five thousand subscribed by plaintiff and ten thousand by defendant, they would carry on the business under the name of the corporation.

To the defendant was accorded the right of organizing a Board of Directors. The original incorporators, in order to enable defendant to accomplish this, resigned, and others were elected in their place. Under the name of the Independent Ice and Distilled Manufacturing Co., Ltd., plaintiff and the defendant carried on the business of making and selling ice.

The concern prospered. It appears on the minutes of the company that in April, 1896, J. S. Anderson, L. Lederle, L. R. McCartney, Geo. Bonning, Louis C. Jacob, *per proxy,* held a meeting for the organization of the company, and that every one present agreed to take stock. The capital of the company was fixed at fifty thousand dollars. Anderson produced at the meeting a copy of a charter he had selected, being the best out of several he had studied. This charter was afterward signed before a notary. Plaintiff was elected president and general manager.

Another meeting of the Board was held in the following May and the details of the business received the Board's attention.

At another meeting held later, in the same month, it appears that some of the members resigned and others were elected in their place, in accordance with the agreement entered into between plaintiff and defendant.

The defendant was elected president of the company, and plaintiff the superintendent and general manager. Afterward, differences arose between plaintiff and defendant, and the former does not appear to have attended any of the meetings of the board of directors.

We are informed in behalf of plaintiff that he desired to increase the cacapity of the plant, but that defendant was unwilling to incur further expense to that end; that they had bought second-hand machinery with the view of increasing the capacity of the works.

After defendant's refusal to increase the plant's capacity by adding other machinery, plaintiff concluded to, and did sell, at a profit.

Another cause of difference was plaintiff's demand for the payment of salary for services as manager. Plaintiff retained some of the collections and the proceeds of the machinery he had sold; defendant in return also drew an amount for his individual account.

The differences resulted in the defendant calling a meeting of the board, at which a resolution was adopted discharging plaintiff as an employe, and seeking to exclude him from participating in the firm's affairs.

It was then that the suit before us for decision was brought. Plaintiff alleges, substantially, that defendant's acts are cause enough for terminating the asserted partnership, and for liquidating its affairs.

Defendant pleaded by way of exception that plaintiff being one of the organizers of the company, was estopped from denying its existence, and, in consequence, his petition disclosed no cause of action.

The court admitted evidence on the trial of the exception; sustained the exception and dismissed plaintiff's suit.

From that judgment plaintiff prosecutes this appeal.

While we are impressed by the fact that plaintiff did, in good faith, all in his power to organize a corporation, he committed the error of organizing it with only four others, when six should have been the number, as the corporation was a manufacturing company under Section 683 of the Revised Statutes, and not a corporation organized under the act of 1888, "for the purpose of carrying on any lawful business or enterprise not otherwise specially provided for." Again, he neglected having the list of subscribers recorded in the mortgage office; and lastly, he was in error in dealing with subscribers, who did not pay for shares or give an equivalent therefor.

These would afford the best grounds to grant the prayer of plaintiff's petition if presented by a third person.

The plaintiff is not only not a third person, but, from the first, he was the promoter and organizer of the company, and received benefits from the business.

It is evident that plaintiff always treated the charter as binding until he discovered that he and defendant could no longer agree.

It was, as we take it, only then that he sought legal advice and dis-

covered that there had been an oversight committed in organizing his company.

Though the charter was a nullity, the business was carried on in a corporate name, and plaintiff, its promoter, consented to the proposal of defendant to put in a comparatively large amount in order to sustain its corporate existence.

In a board meeting of the company the defendant was placed in nomination for the presidency by plaintiff and was elected, and he, plaintiff, accepted a position under the charter at the same time.

As far as the record discloses, these were all exclusively corporate actions. Defendant, in all this, properly enough, so far as we know, sought to prosecute his own interest, and, in this, we judge that he met with some degree of success in a financial point of view. The plaintiff, as we gather from the evidence, is not in a position to maintain that defendant was not induced to act upon the assumption of corporate existence of the company the plaintiff had organized, and of which he was, president at the time that defendant also became a subscriber as before stated.

The evidence does not disclose that defendant knew of the invalidity in the charter.

Plaintiff, as a witness, said that defendant insisted on going on under the name of a corporation in order that he might be relieved from any liability beyond his subscription. Such was the understanding, we are informed, between plaintiff and defendant. This being the condition, as between plaintiff and defendant, it must be held binding. Plaintiff chose to agree to this stipulation and bind himself, we may say, and from it he has received benefits. He cannot be released without violating the plain principles of reason and good faith. Cintis vs. Meeker, 48 N. E. 399.

Moreover, he cannot question the legality of his charter of incorporation and of the company he attempted to incorporate, and which under his administration as an officer, has acted as a corporation.

It is therefore ordered, adjudged and decreed that the judgment is affirmed.